# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

DONNA JEAN B.,[1]

       Plaintiff,

v.

Commissioner, Social
Security Administration,

       Defendant.

6:17-cv-01704-BR

OPINION AND ORDER

**ARI D. HALPERN**
Halpern Law Group, PC
62910 OB Riley Rd
Suite 100
Bend, OR 97703
(541) 388-8410

       Attorney for Plaintiff

---

[1] In the interest of privacy and pursuant to the
recommendation of the Judicial Conference of the United States,
this Opinion and Order uses only the first name and the initial
of the last name of the nongovernmental parties. The same
designation will be used to identify nongovernmental family
members named in this case.

1 - OPINION AND ORDER

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1021

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**SARAH ELIZABETH MOUM**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2531

        Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Donna B. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.

For the reasons that follow, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on March 10, 2014, alleging a disability onset date of December 1, 2011. Tr. 133-

35.[1]  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on August 22, 2016.  Tr. 30-53.  At the hearing Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on October 12, 2016, in which she found Plaintiff was not disabled before her December 31, 2012, date last insured and, therefore, is not entitled to benefits.  Tr. 18-29.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on August 29, 2017, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on September 15, 1955, and was 60 years old at the time of the hearing.  Tr. 133.  Plaintiff completed high school.  Tr. 151.  The ALJ found Plaintiff has past relevant work experience as a volunteer coordinator.  Tr. 24.

Plaintiff alleges disability during the relevant period due to "degenerative disease of the lumbar spine, status post three lumbar surgeries; and right shoulder adhesive capsulitis."  Pl.'s Brief at 1.

---

[1] Citations to the official transcript of record filed by the Commissioner on November 15, 2017, are referred to as "Tr."

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 22-24.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as

adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.

2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A

'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

**ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity (SGA) from her December 1, 2011, alleged onset date through her December 31, 2012, date last insured. Tr. 20.

At Step Two the ALJ found Plaintiff has the severe impairments of degenerative disc disease "status-post three lumbar surgeries (including two lumbar surgeries in December 2011)" and right-shoulder adhesive capsulitis. Tr. 20.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments during the relevant period did not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 21. The ALJ found Plaintiff had the RFC to perform the full range of sedentary work during the relevant period. Tr. 21.

At Step Four the ALJ found Plaintiff could perform her past relevant work as a volunteer coordinator during the relevant period. Tr. 324. Accordingly, the ALJ concluded Plaintiff was not disabled from December 1, 2011, through December 31, 2012.

**DISCUSSION**

Plaintiff contends the ALJ erred when she (1) partially rejected Plaintiff's testimony; (2) gave "no weight" to the statements of Plaintiff's husband Earl B.; (3) gave "little

8 - OPINION AND ORDER

weight" to the opinion of Kathleen Moore, M.D., Plaintiff's treating physician; (4) failed to include all of Plaintiff's limitations in her hypothetical to the VE; and (5) found at Step Four that Plaintiff could perform her past relevant work as a volunteer coordinator.

## I. The ALJ did not err when she partially rejected Plaintiff's testimony.

Plaintiff alleges the ALJ erred when she partially rejected Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id.*  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester*, 81 F.3d at 834).

Plaintiff testified at the hearing that during the relevant period she could not lift more than five pounds, she could only sit for half an hour, she could stand for five-to-ten minutes before she had to move around, she did not drive "very often" because it caused her back to hurt, and she had to lie down for over one quarter of the day to alleviate her back pain.  Tr. 37–38, 41–42.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause [Plaintiff's] alleged symptoms" during the relevant period, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Tr. 22.  Specifically, the ALJ found the record does not support the severity of Plaintiff's back-impairment symptoms during the relevant period.  The ALJ noted Plaintiff underwent two surgeries in December 2011 to repair a recurrent disc herniation.  The record reflects Plaintiff experienced pain and weakness following surgery, but she improved gradually until she suffered a third disc herniation.  For example, on January 27, 2012, Dr. Moore

reported Plaintiff had some improvement "of her nerve," but she still had "symptoms in her right leg especially surrounding her right foot with kind of a dysesthesia and some weakness in her right anterior tib and EHL." Tr. 342. Dr. Moore decided to "keep [Plaintiff] in a brace" and "proceed with caution." Tr. 342. On March 2, 2012, Plaintiff reported to her physical therapist that she had slept overnight on an air mattress that "went soft"; she stood on concrete "all day"; and, as a result, she was "very sore." Tr. 281. On March 15, 2012, however, Dr. Moore reported Plaintiff "had some increase in her strength and her right leg for sure." Tr. 340. Dr. Moore's examination showed Plaintiff had "maybe some breaking weakness of her right anterior tib[, but it is] a lot better than it was. She can toe walk now without difficulty." Tr. 340. Plaintiff had "definitely improved a lot with physical therapy." Tr. 340. On April 5, 2012, Dr. Moore reported Plaintiff "ha[d] been doing great, gradually getting better," but she had a "flare up after a trip over to The Valley. She just took approximately a three-hour drive, slept on an air mattress that really did not have a lot of air, and then went to a party the next day where she was standing on concrete a lot." Tr. 338. Plaintiff reported pain in her back "but primarily in her left leg." Tr. 338. Dr. Moore noted Plaintiff's "pain before has always been in her right leg. This is left buttock, left posterior thigh pain." Tr. 338. In

her examination of Plaintiff Dr. Moore found swelling in
Plaintiff's back, and a

> neurologic exam in her left leg shows just a
> mildly diminished left patellar reflex.  She still
> has a diminished right ankle jerk reflex.  Her
> motor exam is 5/5 in both of her legs.  I am real
> happy to see that her right anterior tib appears
> to have fully improved, but she has a positive
> straight-leg raise on the left now, seated and
> supine.  She still has diminished sensation over
> her right lateral calf and right dorsum and
> plantar foot.

Tr. 338.  Dr. Moore expressed concern that Plaintiff had a new
disc herniation, but she noted "we are going to try to manage
this.  This should get better. . . .  We are going to hold off on
any MRI. . . .  We will hold off on any injections. . . .  We are
going to try her with antiinflammatory [sic] medications."
Tr. 338.  On June 12, 2012, Dr. Moore reported Plaintiff still
had "some numbness in her right left [but her] right foot is
super strong."  Tr. 337.  On September 17, 2012, however,
Dr. Moore reported Plaintiff was suffering "progressive right
lower extremity pain with numbness and tingling traveling along
the right lateral thigh and into the anterior calf and foot.  The
pain is worse with extended sitting or standing.  She is worried
about progressive weakness."  Tr. 336.  Dr. Moore's examination
of Plaintiff reflected "deep tendon reflexes mildly diminished
over the right ankle.  Otherwise, 2+ throughout.  Babinski's arc
downgoing. . . .  Strength is 5/5 with the exception of right
anterior tib, which is 4/5.  Sensation is diminished over the

12 - OPINION AND ORDER

right lateral thigh and calf. Otherwise grossly intact throughout to light touch. Motor exam, mildly positive right seated straight-leg raise, negative on the left." Tr. 336. Dr. Moore expressed concern about Plaintiff's "progressive lower extremity weakness" and recommended a lumbar MRI. Tr. 336. On October 1, 2012, Dr. Moore noted Plaintiff's MRI reflected Plaintiff had "a re-herniation on the right L4-L5" and "L5 radiculopathy." Tr. 335. Dr. Moore recommended an epidural steroid injection, which Plaintiff underwent shortly afterwards. On November 1, 2012, Plaintiff reported to Dr. Moore that the epidural steroid "ha[d] worked great" and "ha[d] taken away nearly 100% of the pain." Tr. 334. Plaintiff did not have any motor weakness, her "neuro exam [was] intact [*sic*]," and she was walking much better. Tr. 334. On December 4, 2012, Plaintiff reported to Dr. Moore that she was "doing really well" and "had no pain." Tr. 333. Plaintiff was going to physical therapy, exercising in the pool, and planning an extended trip to Oklahoma to be with her daughter after her granddaughter was born. Dr. Moore's records do not reflect complaints from Plaintiff about her back again until December 3, 2013, nearly one year after her date last insured. In addition, on February 4, 2013, Plaintiff reported to her physical therapist that she had just spent 45 days in Oklahoma with her daughter helping to care for Plaintiff's newborn granddaughter. Tr. 256. Plaintiff had some

"occasional L leg pain" after her visit to Oklahoma, but she was
"able to heel and toe walk on the R which she previously ha[d]
not been able to do. The R dorsiflexion is now 5/5 (which used
to be 4/5). She is not 5/5 LEs." Tr. 256. Thus, although the
record reflects Plaintiff was suffering pain and weakness during
part of the relevant period after she had undergone two back
surgeries and then again when she suffered another herniation,
Plaintiff also experienced nearly complete relief from pain and
weakness during the relevant after she had an epidural injection.
The pain relief and improved strength lasted for at least a year
after the end of the relevant period.

Accordingly, the Court finds on this record that the ALJ did
not err when she partially rejected Plaintiff's testimony
regarding the intensity, persistence, and limiting effects of her
symptoms during the relevant period.

## II. The ALJ did not err when she gave "no weight" to Earl B.'s statement.

Plaintiff contends the ALJ erred when she gave "no weight"
to the August 15, 2016, statement of Earl B.

Lay-witness testimony regarding a claimant's symptoms is
competent evidence that the ALJ must consider unless she
"expressly determines to disregard such testimony and gives
reasons germane to each witness for doing so." *Lewis v. Apfel*,
236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel.
Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ,

14 - OPINION AND ORDER

in determining a claimant's disability, must give full
consideration to the testimony of friends and family members.").
The ALJ's reasons for rejecting lay-witness testimony must also
be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir.
2006).  When "the ALJ's error lies in a failure to properly
discuss competent lay testimony favorable to the claimant, a
reviewing court cannot consider the error harmless unless it can
confidently conclude that no reasonable ALJ, when fully crediting
the testimony, could have reached a different disability
determination." *Stout,* 454 F.3d at 1056.

Earl B. stated Plaintiff "struggled to function" for two
years after her surgeries.  Tr. 209.  As examples he stated
Plaintiff could not sit, stand, or walk for more than 30 minutes
without needing to take a break to lie down or to move around for
two years after surgery.  Earl B. also noted he had to help
Plaintiff go to the bathroom for six months after her surgeries.

The ALJ did not give any weight to Earl B.'s statement on
the ground that it was not supported by the medical record.
Specifically, the ALJ noted the medical record reflects Plaintiff
had significant limitations for a few weeks after her December
2011 surgeries, but those limitations "did not persist at a
disabling level for more than 12 months" during the relevant
period.

As noted, the record reflects Plaintiff experienced some

improvement after her December 2011 surgeries until she suffered a third herniated disc in mid-2012. After Plaintiff received a steroid injection in October 2012, however, she experienced full pain relief, much less weakness, and improved strength and range of motion.

Accordingly, the Court concludes on this record that the ALJ did not err when she did not give any weight to Earl B.'s statement regarding the severity of Plaintiff's impairments for two years after her December 2011 surgeries.

### III. The ALJ did not err when she gave "little weight" to Dr. Moore's opinion.

Plaintiff asserts the ALJ erred when she gave little weight to Dr. Moore's September 14, 2015, opinion.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

On September 14, 2015, Dr. Moore completed a Request for Medical Opinion in which she stated Plaintiff has "not been able

to engage in sedentary, light or medium work . . . on a regular and sustained basis" from December 2011 through the date of her opinion. Tr. 484. Dr. Moore explained Plaintiff "has hx of two back surgeries, the most recent in 2011. [Plaintiff] has consistent, persistent leg and back pain, which causes the need for frequent position changes, to include laying down frequently." Tr. 484. In her response to the Request for Medical Opinion, Dr. Moore noted Plaintiff complained of "[m]uch difficulty sitting or standing [for] 30 minutes without needing to walk around," the need to "lie down three to four times a day for at least 30 minutes," and the "inability to lift 20 pounds on even an occasional basis." Tr. 484. Dr. Moore stated Plaintiff's complaints are "associated with clinically demonstrated impairments that could reasonably be expected to produce the claimed symptoms." Tr. 484. Dr. Moore, however, left blank the section of the Request that asked her to "identify the clinically demonstrated impairments/diagnosis that could reasonably be expected to produce the claimed symptoms." Dr. Moore noted she did not consider Plaintiff to be a malingerer and that she considered Plaintiff's complaints to be reasonable.

The ALJ, however, gave little weight to Dr. Moore's opinion as to the relevant period. The ALJ noted Dr. Moore's opinion

> is inconsistent with her own treating notes, which
> show by December 2012 ([Plaintiff's] date last
> insured) that [Plaintiff's] back was doing well
> and . . . she reported no pain, and [Dr. Moore]

> reported normal motor, reflect, and sensory
> examinations.

Tr. 24. As noted, the record reflects Plaintiff suffered pain and weakness during part of the relevant period after she had undergone two back surgeries in December 2011 and then again when she suffered another herniation in 2012. Plaintiff, however, experienced nearly complete relief from pain and weakness during the relevant after she had an epidural injection. The pain relief and improved strength lasted for at least a year after the end of the relevant period. For example, on November 1, 2012, Plaintiff reported to Dr. Moore that the epidural steroid "ha[d] worked great" and "ha[d] taken away nearly 100% of the pain." Tr. 334. Plaintiff did not have any motor weakness, her "neuro exam [was] intact [*sic*]," and she was walking much better. Tr. 334. On December 4, 2012, Plaintiff reported to Dr. Moore that she was "doing really well" and "had no pain." Tr. 333. As noted, Plaintiff was going to physical therapy, exercising in the pool, and planning an extended trip to Oklahoma to be with her daughter after her granddaughter was born. Dr. Moore's records do not reflect complaints from Plaintiff about her back again until December 3, 2013, nearly one year after her date last insured. In addition, on February 4, 2013, Plaintiff reported to her physical therapist that she had just spent 45 days in Oklahoma with her daughter helping to care for Plaintiff's newborn granddaughter. Tr. 256. Plaintiff had some "occasional

18 - OPINION AND ORDER

L leg pain" after her visit to Oklahoma, but she was "able to heel and toe walk on the R which she previously ha[d] not been able to do. The R dorsiflexion is now 5/5 (which used to be 4/5). She is not 5/5 LEs." Tr. 256.

Accordingly, on this record the Court concludes the ALJ did not err when she gave little weight to that portion of Dr. Moore's September 2015 opinion relating to the relevant period.

## IV. The ALJ did not err when she failed to include all of Plaintiff's limitations in her hypothetical to the VE.

Plaintiff alleges the ALJ erred when she failed to include all of Plaintiff's limitations in her hypothetical to the VE. Specifically, Plaintiff alleges the ALJ failed to include limitations identified by Plaintiff, her husband, and Dr. Moore.

The Court has already concluded the ALJ did not err when she rejected portions of Plaintiff's alleged limitations asserted by Plaintiff, her husband, and Dr. Moore. On this record, therefore, the Court also concludes ALJ did not err when she did not include those limitations in her hypothetical to the VE.

## V. The ALJ erred at Step Four when she found Plaintiff could perform her past relevant work as a volunteer coordinator.

Plaintiff testified at the hearing that she last worked from 2002 through 2007 as a Smart Coordinator for the Oregon Children's Foundation. Tr. 35. Plaintiff testified she "got volunteers to come in and read to children, kindergarten to . . .

third grade," answered telephones, read to students, and occasionally lifted up to forty pounds. Plaintiff worked six hours a day for four days per week.

The VE testified "[t]he job [in the Dictionary of Occupational Titles (DOT)] that appear[ed] to best fit [the job of Smart Coordinator] is a Volunteer Coordinator . . . [DOT code] 187.167-022." Tr. 49. Volunteer Coordinator is a sedentary, skilled job with an SVP of 7. Tr. 49. The VE testified an individual of Plaintiff's age and education who could perform the full range of sedentary work would be able to perform the job of Volunteer Coordinator "not as the job was actually performed [by Plaintiff], but according to the DOT, she – that being a sedentary job, yes." Tr. 49.

Plaintiff's attorney then engaged in the following exchange with the VE:

> Q: [W]hat would be required for an SVP of 7 job . . . to have it count as past relevant work?
>
> A: We're looking at between two and four years of experience to be able to be considered able to do that job.
>
> Q: And would that be two to four years of experience full-time?
>
> A: Yes.

Tr. 50. Plaintiff's attorney then asserted at the hearing:

> I'm not sure that [Plaintiff] reached the SVP 7 for the amount of time that – time with her work history report. It's a part-time job and the part of the Volunteer Coordinator was a small . . . so

> I would argue . . . that's not the accurate
> characterization or if it is, [Plaintiff] hasn't
> met the SVP requirements based on [the VE's]
> answer.

Tr. 52.

The ALJ acknowledged in her decision that Plaintiff performed her work as a Smart Coordinator on a part-time basis, but she noted Plaintiff's "earnings record reflects that this work was performed at the substantial gainful activity level." Tr. 24. The ALJ asserted Plaintiff "and her representative both failed to raise [the] issue [of Plaintiff performing the work at a level that did not meet the SVP 7 requirements] at the hearing." Tr. 24.

Plaintiff contends neither of the ALJ's findings are accurate. Plaintiff points out that the transcript reflects Plaintiff's attorney specifically elicited testimony from the VE that establishes a job with an SVP of 7 would only qualify as past relevant work if it had been performed full-time for two to four years, and the record reflects Plaintiff performed the Smart Coordinator job only part-time for five years. The record also reflects Plaintiff's counsel at the hearing specifically questioned whether Plaintiff's part-time work was sufficient to meet the requirements for a SVP 7 job. Accordingly, the ALJ erred when she asserted Plaintiff's counsel failed to raise whether Plaintiff's part-time work met the SVP 7 job criteria.

In addition, Plaintiff's earnings record reflects her

earnings as a Smart Coordinator for years 2002-2006 did not reach the level required to qualify as SGA. Thus, according to Plaintiff, her work as a Smart Coordinator did not qualify as past relevant work for any year except 2007.

The regulations governing Social Security state: "We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). In addition, Social Security Ruling (SSR) 82-62 explains:

> We consider that your work experience applies [*i.e.*, is relevant] when it was done within the last 15 years, lasted long enough for you to learn to do it, *and was substantial gainful activity.*
>
> *   *   *
>
> [A claimant's] [c]apacity to do past work may be indicative of the capacity to engage in SGA *when that work experience constituted SGA* and has current relevance considering duration and recency.

Emphasis added.

As noted, Plaintiff performed the work of Smart Coordinator part-time for five years, and in only one of those years did she perform it at a level that constituted SGA. Accordingly, on this record, the Court concludes the ALJ erred when she concluded Plaintiff had past relevant work as a Volunteer Coordinator and that Plaintiff could perform that past relevant work as described

in the DOT.

## REMAND

The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

On this record the Court concludes further proceedings are necessary because the ALJ did not ask the VE about other jobs that Plaintiff could perform and did not proceed to Step Five of the required Regulatory Sequential Evaluation. Thus, the Court concludes a remand for further proceedings consistent with this Opinion and Order is required to permit the ALJ to complete Step Five of the analysis.

## **CONCLUSION**

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 28 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 30th day of October, 2018.


_____
ANNA J. BROWN
United States Senior District Judge